UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WISCONSIN

*In re*:

JESSE LEE COBURN,

Case Number: 24-11054-7

Debtor.

*In re*:

LINDA MICHELLE HYLAND,

Case Number: 24-10657-7

Debtor.

# MEMORANDUM DECISION ON MOTION TO RECUSE AND ORDER TO SHOW CAUSE

Attorney Vicki Piontek ("Piontek") of Recovery Law Group has filed eight cases in this District since December 2023.[1] Due to a pattern of failures, deficiencies, or mistakes in the cases, the Court issued an Order to Show Cause and scheduled a hearing for February 20, 2024. The hearing was held and matters related to the deficiencies that led to the hearing were reviewed. The hearing was continued to permit Piontek to address the deficiencies. Additionally, Piontek was told she could take CM/ECF training.

At the continued hearing, the Court confirmed the issues related to failure to pay filing fees on the petition dates and failure to file the creditor

---

[1] One case was filed June 27, 2024 (*In re Heyerdahl*, Case No. 24-11307-7), after the Court issued the present Order to Show Cause.

matrices as required had been addressed and resolved in the cases identified on February 20. After that hearing, Piontek filed two other cases. The filing fee was not paid in either the *Hyland* or *Coburn* case on the petition dates. Neither were the creditor matrices filed on the petition dates. A series of other deficiencies occurred in the *Coburn* case generating more deficiency notifications to Piontek.

Another Order to Show Cause was scheduled based on the repeated errors. A hearing was held on June 17. At 6:06 a.m. on the morning of the hearing, Piontek filed a response to the Order to Show Cause. At the hearing, when asked for her explanation of the deficiencies, she said, "I defer to my response to the Order to Show Cause." Because the Court was unaware of the early morning filing, it reviewed it. The response stated her lack of understanding about the acts or omissions that were the subject of the hearing or of any reference to an applicable local rule. (*Coburn*, ECF No. 23). Further that she required specificity of the acts, omissions, and deficiencies. She then also wanted the opportunity to respond.

*The June 2024 Order to Show Cause*

The Court stated a further Order to Show Cause would be issued listing the deficiencies reflected in each of the dockets in cases filed by Piontek. The Court then issued a detailed Order to Show Cause ("OSC") identifying the repeated failures and mistakes that occurred. The OSC provided that a hearing

2

would be held on July 15 and any written response would be due five business days before the hearing.[2]

Piontek filed a written response. She generally admits the deficiencies listed in the OSC occurred but disputes that the failures violate the Federal Rules of Bankruptcy Procedure ("Rules"). She repeatedly asserts that "by paying the filing fee within approximately 48 hours she complied with any applicable local or Federal rule." She believes that "[t]here is no 'same day' requirement in either the local rule or the Federal rule." Piontek adopts a similar position for the creditor matrix, arguing there is no "same day" requirement regarding when the matrix should be uploaded.

In support of both arguments, Piontek points to a case from the Bankruptcy Court for the Eastern District of Pennsylvania, *In re Vaughn*, Case No. 24-11235. She attaches as an exhibit a screenshot of the docket in *Vaughn*, filed April 11, 2024. The docket includes an entry stating that the filing fee is due April 19, 2024, or eight days after the petition date. She suggests this docket entry is the equivalent of a local rule or interpretation of the Rules confirming that a filing fee need not be paid on the petition date but can be paid within eight days after the petition date.

Piontek acknowledges some errors and mistakes. But she explains that her failures were honest human errors and mistakes that anyone could have

---

[2] All references to "OSC" will be to the present OSC issued June 24 in the *Coburn* and *Hyland* cases, unless otherwise noted.

made. She also states that she recently took a CM/ECF training course and will follow future directives of the Court.

The explanations were repeated at a hearing on July 15, 2024. In addition, Piontek confirmed a willingness to take additional training and to comply with the requirements of the Code, Rules, and any local rules.

*The Motion To Recuse*[3]

Piontek moves the Court to recuse itself in the *Coburn* case. She alleges the OSC was spurred in part by communications made by the Clerk's office to Chambers. Piontek assumes the Clerk's office complained about her to Chambers. She then argues that those communications were ex parte and cannot be used to influence the Judge in deciding the case.

On July 15 Piontek maintained the communications were in the nature of an investigation by Chambers. The Court may not, she insists, act in an investigatory capacity and that the OSC reflects such a capacity. Proceeding with an Order to Show Cause is, according to Piontek, the job of a prosecutor. She says the proper party to review and bring an Order to Show Cause such as that before the Court is the United States Trustee.

Piontek cites 28 U.S.C. § 455 as support for her argument. That statute provides that "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." Section 455(b)(1) requires disqualification where the

---

[3] Piontek only filed her motion to recuse in the *Coburn* case, but listed *Coburn* and *Hyland* in the caption. Nonetheless, the Court will address it as if she intended it to be filed and considered in both cases.

4

judge "has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." Piontek further argues the statements from the Clerk's office were ex parte and prohibited under the Code of Judicial Conduct and 28 C.F.R. § 76.15.

This motion was filed on negative notice. The Court scheduled and held a hearing on the motion on July 15, 2024.

### DISCUSSION

A. Motion to Recuse

Title 28 of the United States Code states that a judge should disqualify himself or herself when their impartiality might reasonably be questioned. 28 U.S.C. § 455(a). Judges should also recuse themselves when they have a bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts about the proceeding. 28 U.S.C. § 455(b)(1).

When analyzing whether recusal is appropriate, "the proper test to be applied is whether another with knowledge of all of the circumstances might reasonably question the judge's impartiality." *United States v. Lentz*, 524 F.3d 501, 530 (4th Cir. 2008). "[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion," *Liteky v. United States*, 510 U.S. 540, 555 (1994), and a judge need not recuse themself based on "unsupported, irrational or highly tenuous speculation." *United States v. Cherry*, 330 F.3d 658, 665 (4th Cir. 2003).

The fact that the Court issued an Order to Show Cause is not grounds to recuse the Judge for lack of impartiality. The Court is within its right under

5

Code section 105(a) to issue the OSC and regulate the practice of law in its District.

Just as a district court must be able to exercise its managerial power to maintain control over its docket, so too a bankruptcy court must be able to do so. *Young v. City of Palm Bay*, 358 F.3d 859, 864 (11th Cir. 2004). "This power is necessary for the court to administer effective justice and prevent congestion." *Id.* The Fifth Circuit explained that "court resources and capacities are finite," and so, "within proper limits, judges must be permitted to bring management power to bear upon . . . litigation to prevent it from monopolizing the services of the court to the exclusion of other litigants." *In re Air Crash Disaster at Florida Everglades*, 549 F.2d 1006, 1012 (5th Cir. 1977).

Chambers' communication with Clerk's office staff is not ex parte communication. *Black's Law Dictionary* defines an action as "ex parte" when it is "done or made at the instance and for the benefit of one party only, and without notice to, or argument by, anyone having an adverse interest; of, relating to, or involving court action taken or received by one party without notice to the other." *Black's Law Dictionary* (12th ed. 2024).

Neither the Court nor the Clerk's office are parties or persons for the purpose of such a motion. The Code does not define "party in interest." *In re JMP-Newcor Int'l, Inc.*, 225 B.R. 462, 464 (Bankr. N.D. Ill. 1998). The Seventh Circuit, however, has said that a "party in interest" is "anyone who has a legally protected interest that could be affected by a bankruptcy proceeding." *Adair v. Sherman*, 230 F.3d 890, 894 n.3 (7th Cir. 2000); *In re FBN Food Servs.,*

6

*Inc.,* 82 F.3d 1387, 1391 (7th Cir. 1996). In keeping with the general standing rule in bankruptcy cases, the interest must be pecuniary. *See Cult Awareness Network, Inc. v. Martino (In re Cult Awareness Network, Inc.),* 151 F.3d 605, 607–08 (7th Cir. 1998) (holding that to have standing, "a person must have a pecuniary interest in the outcome of the bankruptcy proceedings"). In other words, a party is one with a pecuniary interest in the distribution of assets or some other legally protected pecuniary interest that could be affected by the bankruptcy proceeding.

The Court does not have a pecuniary interest in the outcome of any of the bankruptcy proceedings filed by Piontek. It holds no legally protected interest that those cases could affect.

The term "person" includes individuals "but does not include government unit" other than a government unit that acquires an asset under specified circumstances, is a guarantor of a pension, or a legal or beneficial owner of certain assets. 11 U.S.C. § 101(41). The Court is a unit of the judicial branch of the government. It includes the Judge, Chambers staff, and the office of the Clerk of Court and its employees. Communications between Chambers and the Clerk's office did not unduly influence the Judge. Chambers needs to have an effective means of communication with the Clerk's office staff to efficiently administer cases.

Further, each of the deficiencies addressed in the OSC are based on specific deficiency notices contained in the dockets of the cases. A pattern of errors or deficiencies impacts the efficient administration of the Court. When

7

identified, it is appropriate to be addressed so that the reasons for the errors can be determined, managed, and corrected. The suggestion at the first OSC hearing that training would be available illustrates the desire of the Court for the errors to be corrected so that repetition of the mistakes can be avoided.

Issuing the OSC is within the powers, duties, and authority of the Court under 11 U.S.C. § 105. Information contained in the docket and communications between Chambers and the Clerk's Office are not ex parte communications nor does it show any impartiality requiring recusal. There is no basis to grant this motion.

B. Order to Show Cause

Courts unanimously interpret Fed. R. Bankr. P. 1006(a) to mean that filing fees are due **at the same time** the petition is filed:

- *McBride v. Riley (In re Riley)*, 923 F.3d 433, 440 (5th Cir. 2019) (filing fee is "a payment due at the time the petition is filed").

- *In re Alderman*, 2022 Bankr. LEXIS 3527, *3–4 (Bankr. N.D. Ohio Dec. 14, 2022) ("The filing fee specified in 28 U.S.C. § 1930 must be paid at the filing of the petition under Bankruptcy Rule 1006(a). Accordingly, the time for determining whether a fee was "due" is the time the petition or other pleading was filed.") (internal quotations omitted).

- *In re Baldwin*, 640 B.R. 104, 115 (Bankr. W.D. Ky. 2021) ("Bankruptcy Rule 1006 requires that the filing fee shall accompany

8

every petition. In other words, the fee must be paid at the time the petition is filed.").

- *Office of the United States Trustee v. Jones (In re Alvarado)*, 363 B.R. 484, 486 (Bankr. E.D. Va. 2007) ("[E]very petition must be accompanied by a filing fee as prescribed by the Judicial Conference of the United States under 28 U.S.C. § 1930. The fee is payable to the clerk upon the commencement of the bankruptcy case. Fed. R. Bankr. P. 1006(a).").

- *In re Bost*, 341 B.R. 666, 673 n.6 (Bankr. E.D. Ark. 2006) ("Pursuant to Fed. R. Bankr. P. 1006, the filing fee prescribed by 28 U.S.C. § 1930 must be paid with the bankruptcy petition unless an application to pay filing fee in installments is filed.").

- *In re Mudd*, 2024 Bankr. LEXIS 1475, at *26 (Bankr. W.D. Okla., June 21, 2024) ("Quite simply, a debtor is required to pay the filing fee prescribed by 28 U.S.C. § 1930 with the petition unless the debtor submits a signed application stating that the debtor is unable to pay the filing fee except in installments.") (internal quotation omitted).

- *Hodges v. Armada (In re Hodges)*, 342 B.R. 616, 622 (Bankr. E.D. Wash. 2006) ("[T]he filing fee must be paid at the time of filing of the original petition.").

Piontek is incorrect that filing fees may be paid within 48 hours[4] after filing the petition. Every case interpreting the language of Fed. R. Bankr. P. 1006 consistently holds the filing fee must be paid when the petition is filed.

Her claim that the Bankruptcy Court for the Eastern District of Pennsylvania has interpreted this language to mean "within seven days" is misguided. Despite the docket entry in *Vaughn*, the Eastern District of Pennsylvania Bankruptcy Court's local rule specifies that "[f]ees shall be paid at the time of filing of the document or, in the case of multiple filings on a single day, fees incurred during that day may be accumulated and paid at one time but no later than midnight prevailing Eastern Time of the day following the day of the multiple filings." Bankr. E.D. Penn., Local Rule 5005-4. In addition, the document attached to the docket entry in *Vaughn* contains a Fee Notice saying, "Please be advised that the filing fee has not been received as required pursuant to the Federal Rules of Bankruptcy Procedure and/or the Local Rules of this court." While the docket entry does provide that if the fee is not paid on or before a date that is eight days after the petition was filed the matter would be referred to the Chief Judge, that is not an interpretation or change in the Rule.

Piontek minimizes or denies her failures and mistakes. She dismisses the plain language of the Code and Rules. Her position that, because her clients may be afforded a grace period before dismissal in other jurisdictions, the

---

[4] Or eight days as Piontek suggests is the rule in the Bankruptcy Court for the Eastern District of Pennsylvania.

Rules do not mean "at the time the petition is filed" is concerning. Throughout her response, Piontek chalks up her failures to "honest human error mistake[s] that anyone with or without ECF training could have made."[5] She uses this general response to explain her failures to use the correct name on the certificate of financial course management in *McGhee*,[6] filing an unsigned statement of intent in *Coburn*,[7] using the incorrect event code for a statement of social security number in *Coburn*,[8] and using the "List of 20 Largest Unsecured Creditors" event in *Coburn*.[9]

While honest mistakes and human error should be afforded some level of understanding, Piontek's continued and persistent mistakes cannot be overlooked. This is especially true considering the ratio of mistakes she's made to the number of cases she's filed.

Additionally, the Court understands that Piontek has been licensed to practice for more than two decades. It appears she was admitted to the U.S. District Court for the Western District of Wisconsin in September 2015. And the Court understands that her practice focuses, at least in part, on consumer bankruptcy cases. This Court's familiarity with experienced consumer attorneys has been that occasional errors can occur but are seldom repeated. Deficiency notices often result in corrections, requests for training, and then are infrequently repeated.

---

[5] *Coburn*, Case No. 24-11054, Response to OSC, ECF No. 30, p. 11 of 27.
[6] *Id.*
[7] *Id.*, p. 17 of 27.
[8] *Id.*, p. 16 of 27.
[9] *Id.*, p. 19 of 27.

Rather than identifying the reason for the deficiency and addressing it by simply correcting the error, Piontek corrected the deficiencies but then repeated some of the same errors in later filings. When items such as failing to pay the filing fee or file the matrix on the petition date were raised, her position was she would do so but that she had time after the petition date to do so. Care in complying with the Code and Rules as well as attention to detail is anticipated in every case. The impact of repeated failures should not be ignored by either counsel or the Court.

In other instances, Piontek brushes off her mistakes and failure to make corrections as moot. For example, in paragraph 3 of the OSC (regarding *Petro*), the Court notes Piontek did not upload a statement of current monthly income within 14 days of filing the petition.[10] On the 14th day, Piontek moved to extend the time along with a proposed order. The motion was timely because it was filed before the expiration of time. But the proposed order was filed in the wrong format. She attempted to upload a corrected one but it was also improperly formatted. She never uploaded a corrected order.

In her response to the OSC, Piontek says that she didn't upload a corrected order because all the documents were filed within the time requested in the motion. So she assumed the motion was moot and there was no need for an order.

Fed. R. Bankr. P. 1007(c) states that initial filings, including a statement of current monthly income, *shall* be filed within 14 days of the petition. Piontek

---

[10] The due date was January 24, 2024.

didn't timely file the statement of current monthly income. While a motion to extend the time was filed, no order granted an extension. Technically, the late filing was not excused or authorized because no order was ever entered. Thus, there was no extension of time. It is not the job of the Court to create the order—particularly when counsel was advised through notices on the docket to upload a corrected proposed order. Nevertheless, no motion to dismiss for the failure was or is expected to be filed. The information was provided before the Section 341 meeting and under the circumstances the Debtor should not be adversely impacted by the failure of counsel to have submitted an order.

Piontek also failed to upload the mailing matrix at the time the petitions were filed in more than one case. Each time a deficiency notice was issued on the docket.

Piontek acknowledges that the matrices were not filed on the petition dates but says that no exact date is stated in a local rule. Thus, she reasons that some time period after the petition date satisfied the requirements of the Bankruptcy Rules.

She again points to *Vaughn* and a docket entry that provides, "[D]ebtor having failed to file or submit with the petition all of the documents required by Fed. R. Bankr. P. 1007, It is hereby ORDERED that this case **MAY BE DISMISSED WITHOUT FURTHER NOTICE** if the documents listed are not filed by deadlines listed." There is then an Order attached to the docket event. That Order requires the creditor matrix be filed within six days of the date of the Order. The fact that the case was not immediately dismissed is not the

13

equivalent of a change in the Rules. Instead, the court simply afforded a warning that the case could be dismissed if the deficiency was not addressed. That warning is different from a rule and does not modify the provisions of the Rules. In fact, the local rule states the contrary:

> (a) *Definition.* "Matrix List of Creditors" means a list of the name and complete address of each creditor in a case in a format designated by the Clerk.
>
> . . .
>
> (d) *Deadline for Filing: Voluntary Case.* In a voluntary case, the debtor shall file a Matrix List of Creditors *with the petition.* Failure to file the Matrix List of Creditors may constitute cause for dismissal of the case.

Bankr. E.D. Pennsylvania Local Rule 1007-2: Matrix List of Creditors (emphasis added).

Just as Rule 1006 requires that the filing fee "shall accompany every petition," Rule 1007(a) requires that the debtor "shall file with the petition a list containing the names and address of each entity included or to be included [in the schedules]." That list is known as the Mailing Matrix, and it must be filed at the time the petition is filed.

The Notes of the Advisory Committee on the 2005 amendments confirms the importance of filing the list of creditors with the petition. This is because notice to creditors and other parties in interest is "essential to the operation of the bankruptcy system." As confirmed by the Notes of the Advisory Committee, "While this rule renders unnecessary, in part, local rules on the subject, this rule does not direct any particular format or form for the list to take. Local

14

rules still may govern those particulars of the list." So there is no need for a local rule confirming the information contained in the list must be filed with the petition. Instead, like other courts, this Court simply adopted a rule defining the format for the list.

Bankruptcy courts have the inherent power to regulate the practice of law before them. *In re Volpert*, 110 F.3d 494, 500 (7th Cir. 1997) ("We therefore hold that, under 11 U.S.C. § 105(a), bankruptcy courts may punish an attorney who unreasonably and vexatiously multiplies the proceedings before them."); *In re MPM Enters., Inc.*, 231 B.R. 500, 503 (E.D.N.Y. 1999) (bankruptcy court has power to permanently disbar attorney from appearing before it). Disbarment is reserved for "extreme cases" of "[s]evere forms of misconduct." *Oliveri v. Thompson*, 803 F.2d 1265, 1267 (2d Cir. 1986). Disbarment should be administered only by a court "with care, specificity, and attention to the sources of its power." *MPM Enters.*, 231 B.R. at 503.

Piontek did finally take CM/ECF training with the Clerk's office. During that training she was walked through the filing of a new case. She filed the petition with the creditor matrix. She also paid the filing fee at the time the case was filed. Certificates of Credit Counseling were filed for the joint debtors. While no Schedules, Statement of Financial Affairs, Statement of Monthly Income, Employee Income Records, or Attorney Disclosure of Compensation were filed on the petition date, notice was provided of the deficiency stating that the filings were due by July 11, 2024. All of the pleadings subject to that notice were filed on July 11 (*In re Heyerdahl*, Case No. 24-11307-7).

15

And the training undertaken should have provided assurance to Piontek that if she is unaware of the proper steps required to undertake electronic filings, there are resources available to her. She may call the office of the Clerk of Court and ask for guidance or assistance. Alternatively, she can refer to the ECF User's Manual available on the Court's website. It contains step-by-step instructions for filing cases electronically including, for example, how to upload a creditor matrix as a .pdf with the Petition and how to file and upload the .txt creditor matrix. The need to do so in order to run the Judge/Trustee assignment was explained and is referenced in the ECF User's Manual. Notices of the filing of the case cannot be sent to creditors and parties in interest until there is a matrix <u>and</u> the case has been assigned to a judge and trustee.

The Court declines the suggestion that this Court should take the opportunity to adopt a local rule about the meaning of the phrase "Every petition shall be accompanied by the filing fee."[11] A decision or rule is not necessary because the plain language of the Rule explains the meaning. The same can be said of the requirement for filing a creditor matrix on the petition date.

If more cases are filed, the Court is confident that Piontek is now fully aware of the requirements under the Rules that the petition must be accompanied by the filing fee and the creditor matrix. That means those items are due on the petition date. She was successfully able to do so in the most recent case. The Court believes that following the training Piontek will be able

---

[11] *Coburn*, ECF No. 30, ¶ 3c.

16

to file both a .pdf and .txt creditor matrix with the petition. Based on her comments, the Court believes that if Piontek is uncertain of how to file any pleading in a case in this District, she will either look at the ECF User Manual or call the Clerk of Court's office to ask for assistance or instruction on the mechanics for filing. The Court anticipates the concerns related to these requirements have been addressed and will not be repeated.

Piontek's conduct has not risen to the level that a suspension from practice in this District is warranted. In its administrative capacity, the Court will continue to review and consider any future deficiencies that may arise in cases filed by Piontek just as it considers and reviews other repeated deficiencies by other attorneys practicing in this Court. That is a part of the management of the Court to administer effective justice and prevent congestion. *Young v. City of Palm Bay*, 358 F.3d at 864. Again, "court resources and capacities are finite," and so, "within proper limits, judges must be permitted to bring management power to bear upon . . . litigation to prevent it from monopolizing the services of the court to the exclusion of other litigants." *In re Air Crash Disaster at Florida Everglades*, 549 F.2d at 1012. If there remain duplicate and repeated deficiencies or failures, the Court may again address the issues with another Order to Show Cause—whether issued by the Court sua sponte or based on a request from another party in interest. The remedy for such a matter including conditioning, limiting, or otherwise affecting the privileges to file cases in this District may be matters considered in such a hearing. The Court is hopeful and believes that will not be necessary.

17

## Conclusion

Based on the foregoing, the Motion to Recuse is DENIED. The Order to Show Cause is dismissed at this time.

This decision shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and Rule 52 of the Federal Rules of Civil Procedure.

A separate order consistent with this decision will be entered.

Dated: July 18, 2024

BY THE COURT:

Hon. Catherine J. Furay
U.S. Bankruptcy Judge